[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 09-12000

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 11, 2010
JOHN LEY
CLERK

D.C. Docket Nos. 08-02343-CV-T-24-EAJ, 90-BK-10016-PMG

In Re:  THE CELOTEX CORPORATION,
        THE ASBESTOS SETTLEMENT TRUST,

                                            Debtors.
_____

CLAREMONT MCKENNA COLLEGE, et al.,

                                            Plaintiffs-Appellants,

                        versus

ASBESTOS SETTLEMENT TRUST, et al.,

                                            Defendants-Appellees.

Appeal from the United States District Court
for the Middle District of Florida

(August 11, 2010)

Before EDMONDSON and CARNES, Circuit Judges, and GOLDBERG,[*] Judge.

GOLDBERG, Judge:

The Appellants are six colleges[1] ("the Colleges") who brought asbestos-related property damage claims against the Asbestos Settlement Trust ("the Trust"). The Trust originally disputed the Colleges' request for payment on certain claims and commenced adversary proceedings in bankruptcy court. Eventually, the Trust made payments to the Colleges and moved to dismiss the proceedings. The Colleges opposed dismissal, arguing that they were entitled to a payment of post-judgment interest on their claims at the federal judgment rate prescribed by 28 U.S.C. § 1961 ("judgment-rate interest"). See 28 U.S.C. § 1961 (2006). The bankruptcy court rejected the Colleges' argument and granted the Trust's motion for dismissal. The district court affirmed the bankruptcy court's order of dismissal. As explained further below, we AFFIRM the order of dismissal.

## BACKGROUND

A.    Establishment of the Trust

---

[*] Honorable Richard W. Goldberg, Judge, United States Court of International Trade, sitting by designation.

[1] Claremont McKenna College, Michigan State University, Prince George's Community College, Rochester Institute of Technology, the University of Cincinnati, and Fairfield University.

Lawsuits based on exposure to asbestos led Celotex Corporation, and its then wholly-owned subsidiary Carey Canada Inc., (collectively "Debtors") to file for protection under Chapter 11 of the Bankruptcy Code. In re Celotex Corp., 204 B.R. 586, 589-90 (Bankr. M.D. Fla. 1996). In December 1996, after years of negotiations between the Debtors and other interested parties and multiple proposed reorganization plans, the bankruptcy court entered an order confirming the Debtor's reorganization plan. Id. at 616. A principal feature of the Plan was the creation of the Trust. The Trust was established in accordance with section 524 (g) of the Bankruptcy Code, a provision specifically applicable to Chapter 11 reorganizations involving asbestos tort liabilities, to resolve and pay asbestos-related claims. See 11 U.S.C. § 524(g)(2)(B)(i).

The Plan Documents[2] establish the process by which claims are determined and paid by the Trust. Under the Plan Documents, property damage claims ("PD claims") are administered by a Property Damage Claims Administrator ("the Administrator"). Plan art. 4.2(a)(8), (b)(8); Trust Agreement arts. 1.2, 3.3(c);

---

[2] The documents that govern the resolution of the issue are: 1) The Modified Joint Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code for the Celotex Corporation and Carey Canada Inc. (the "Plan"); 2) The Second Amended and Restated Asbestos Settlement Trust Agreement (the "Trust Agreement"); and 3) The Third Amended and Restated Asbestos Property Damage Claims Resolution Procedures ("APDCRP"), (collectively, "The Plan Documents"). The APDCRP is annexed to and incorporated by reference within the Trust Agreement, and along with the Trust Agreement, is in turn incorporated within the Plan. Plan arts. 1.26, 1.106, 1.143, 1.146; Trust Agreement art. 1.2. In the event of inconsistencies, the Plan controls. Trust Agreement art. 9.13.

3

APDCRP § IV(A)(34). If the Administrator allows a PD claim, the allowed claim is then submitted to the Trustees for payment to the claimant.

Because the Trust's current and future liabilities for asbestos claims exceed the Trust assets, the Trust operates as a limited fund that pays PD claimants a fraction of the value of their allowed claims. The Plan directs the Trustees to pay all allowed PD claims according to a "payment percentage," which the Trustees may adjust from time to time to ensure substantially equal treatment of all present and future claims. See Plan art 5.1; Trust Agreement arts. 3.3(c), 3.4(a). In the event of a dispute under the Plan, the bankruptcy court has jurisdiction to enforce and interpret the provisions of the Plan Documents. Plan art. 13.3(c)-(e); accord Trust Agreement arts. 9.13-9.14.

B.     Disputes over Certain PD Claims

Seven PD claims filed by the Colleges and allowed by the Administrator (the "Allowed Claims") are at issue in this proceeding. When the Administrator submitted the Allowed Claims to the Trust for payment, the Trustees originally refused to pay on grounds that the Colleges failed to satisfy the legal prerequisites for payment. The Trust then commenced adversary proceedings against the Colleges in bankruptcy court. In opposing motions, each party sought an order from the bankruptcy court upholding its respective interpretation of the Plan

4

Documents. The dispute largely related to the relative authority of the Administrator and the Trustees over PD claims. On April 1, 2004, the bankruptcy court granted the Colleges' motion for summary judgment and directed the Trust to pay the Colleges' Allowed Claims. See generally Asbestos Settlement Trust. v. Claremont McKenna College (In re Celotex Corp.), Adv. No. 02-522(Bankr. M.D. Fla. April 1, 2004).

While the Trust did not pay the Colleges after the bankruptcy order, the Trustees' later decision to pay the Allowed Claims was in response to this Court's decision in a dispute between the Trust and another PD claimant, the City of New York. See generally Asbestos Settlement Trust v. City of New York (In re Celotex Corp.), 487 F.3d 1320 (11th Cir. 2007) ("NYC Appeal"). The Trust had disputed certain allowed PD claims of the City of New York (the "NYC Claims"). The bankruptcy court ultimately granted summary judgment in favor of the City of New York and ordered the Trust to pay the NYC Claims.

In connection with the bankruptcy court's determination, the court approved an agreement between the Trust and the City of New York regarding the calculation of the liquidated amount for the NYC Claims. Under the terms of the agreement, if payment of the NYC Claims was ultimately directed by a final non-appealable order, the Trust's payment amount to the City of New York would

5

include an additional amount based upon the rate of return earned by the Trust on its investment portfolio during the pendency of the appeal. Meanwhile, the Trust and the Colleges never reached a similar agreement as to the actual amounts to be paid on the Colleges' Allowed Claims.

After the district court affirmed the bankruptcy court's order requiring the Trust to pay the NYC Claims, the Trust appealed to this Court. See generally NYC Appeal, 487 F.3d 1320. The Colleges' Allowed Claims remained in the bankruptcy court during the pendency of the NYC Appeal. On appeal, this Court considered the relative powers of the Trustees and the Administrator under the Plan Documents. See generally NYC Appeal, 487 F.3d 1320. This Court determined, among other matters, that the Plan Documents did not confer to the Trustees the power to independently review and overrule the Administrator's decisions in resolving PD claims. Id. at 1329-30, 1332, 1334. Furthermore, this Court found that the Administrator's actions and decisions were subject to review only for abuse of discretion. Id. at 1337-38.

C. The Trust's Payments on the Colleges' Allowed Claims

In July 2007, after evaluating this Court's decision in the NYC Appeal, the Trust determined that it should no longer withhold payment of the Colleges' Allowed Claims and paid the Colleges. The payments did not include judgment-

6

rate interest on the Allowed Claims. Instead, to calculate the amount paid to the Colleges, the Trust used the same formula that had been used, per agreements, to determine the amount paid to the City of New York and other PD claimants on their allowed claims. Accordingly, the Trust sent payments to the Colleges in amounts that were based upon the total allowed costs determined for each claim, subject to the payment percentage, plus an additional amount calculated pursuant to a formula that factors into account the rate of return earned by the Trust on its investment portfolio during the time that the Colleges' Allowed Claims were under judicial review.

The Trust then moved to dismiss the adversary proceedings against the Colleges on the basis that the issues had been resolved by the payments on the Colleges' Allowed Claims. The Trust reasoned that its payments were in full satisfaction of the Colleges' Allowed Claims. The Colleges opposed dismissal, asserting that they were entitled to judgment-rate interest on their Allowed Claims pursuant to 28 U.S.C. § 1961 rather than the rate of return on the Trust's investment. 28 U.S.C. § 1961 provides that "[i]interest shall be allowed on any money judgment in a civil case recovered in a district . . . at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the

7

date of judgment." 28 U.S.C. § 1961. According to the Colleges, application of judgment-rate interest would require an additional payment from the Trust slightly exceeding $100,000.

The bankruptcy court interpreted the Plan Documents and determined that the Colleges were not entitled to judgment-rate interest on their claims. Order on Motion for Dismissal with Prejudice, Adv. No. 02-522, 6-10 (Bankr. M.D. Fla. March 31, 2008) ("Bankruptcy Court Dismissal Order"). The bankruptcy court therefore granted the Trust's motion to dismiss and denied the College's request for additional payment. Id. at 14-16. The district court affirmed the bankruptcy court's order of dismissal. Claremont McKenna College v. Asbestos Settlement Trust (In re Celotex Corp.), No. 08-2343 (M.D. Fla. March 18, 2009) ("District Court Dismissal Order"). The Colleges appeal to this Court, which has jurisdiction pursuant to 28 U.S.C. § 1291.

## STANDARD OF REVIEW

In the bankruptcy context, this Court sits as a "second court of review . . ." and employs the same standards of review as the district court." In re Issac Leaseco, Inc., 389 F.3d 1205, 1209 (11th Cir. 2004). Legal conclusions by either the bankruptcy court or the district court are reviewed de novo and findings of fact

8

are reviewed for clear error. In re Optical Technologies., Inc., 425 F.3d 1294, 1300 (11th Cir. 2005).

## **DISCUSSION**

The only issue before this Court is whether the Colleges have a legal right to judgment-rate interest pursuant to 28 U.S.C. § 1961. A money judgment in a civil case recovered in federal district court carries the federal judgment-rate interest. 28 U.S.C. § 1961.[3]

The Colleges contend that, under the Plan Documents, when a PD claim achieves "allowed claim" status, it becomes a judgment against the Trust that carries the same right to judgment-rate interest as a judgment in the federal court system. Accordingly, the Colleges maintain that the district and bankruptcy courts erred as a matter of law in determining that the Colleges were not entitled to judgment-rate interest on their Allowed Claims. This Court rejects the Colleges' claim because the express provisions of the Plan Documents and the fundamental purpose of the Trust do not establish that the Colleges are entitled to judgment-rate interest.

---

[3] Courts have found that judgment-rate-interest pursuant to 28 U.S.C. § 1961 applies to the judgments entered by a bankruptcy court. See, e.g., In re Am. Way Serv. Corp., 229 B.R. 496, 538 (Bankr. S.D. Fla. 1999); In re Pester Refining Co., 964 F.2d 842, 849 (8th Cir. 1992) ("Because a bankruptcy court is part of the district court, the statute applies to bankruptcy proceedings."); Ocasek v. Manville Corp. Asbestos Disease Comp. Fund, 956 F.2d 152, 154 (7th Cir. 1992).

9

A.  The Plan Documents do not establish a legal right to judgment-rate interest

The Plan Documents "set forth the entire agreement" and state that "[n]o entity shall be bound by any terms . . . other than as expressly provided for [t]herein."  Plan art. 13.10; accord Trust art. 9.9; see NYC Appeal, 487 F.3d at 1335.  A confirmed plan's provisions are binding on its debtors as well as its creditors, in this case, the Colleges.  11 U.S.C. § 1141(a); see 11 U.S.C § 1142(a).  The Plan Documents, therefore, bind the Trust and the Colleges, and their provisions control as to the allowance and payment of PD claims.  To determine whether the Colleges are entitled to judgment-rate interest, we must independently interpret the terms of the Plan Documents.  See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 112, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989) ("As they do with contractual provisions, courts construe terms in trust agreements without deferring to either party's interpretation.").

The plain language of the Plan Documents negates the claim that the Colleges are legally entitled to judgment-rate interest.  The Colleges rely upon provisions in the Plan Documents stating that an allowed asbestos claim is a "final, nonappealable judgment against the Trust," Plan art. 1.9, and that an allowed claim is deemed "a judgment against the Trust."  APDCRP § IV(A)(5)(6).  However, these provisions never mention interest, let alone state a right to

10

judgment-rate interest on allowed claims. Meanwhile, other provisions in the Plan Documents speak directly to interest on PD claims. The Plan Documents state that, "[e]xcept as expressly stated in the Plan or otherwise [a]llowed by Final Order of the Bankruptcy Court, no interest . . . shall be [a]llowed on any [c]laim . . ." Plan art. 13.15. The following provision reiterates that "[n]o...interest shall be paid with respect to <u>any [c]laim</u>...except as specified herein or as [a]llowed by a Final Order of the Bankruptcy Court." Plan art. 13.16 (emphasis added). In addition, the APDCRP defines the costs that may be included in the calculation of "allowed costs" for PD claims; the definition expressly excludes pre-judgment and post-judgment interest. APDCRP § IV(A)(6). Nowhere do the Plan Documents mention the inclusion of interest in payments on allowed claims.

The Colleges attempt to circumvent the provisions in the Plan Documents expressly prohibiting interest payments by arguing that they refer to earlier phases of claims processing. The Colleges maintain that there are three distinct phases of claims processing: submission, evaluation, and payment. According to the Colleges, the provisions in the Plan Documents expressly prohibiting interest payments refer to the earlier submission and evaluation phases of claims processing before a claim is allowed by the Administrator. In contrast, in the payment stage, when a claim becomes an "allowed claim," the Colleges contend

11

that the claim assumes a special status as a "judgment," and the plain meaning of the term "judgment" carries statutory interest.

Although the Colleges' interpretation has some force, we do not find that an "allowed claim" under the Plan Documents carries the same legal rights as a money judgment in the federal court system, and specifically, the right to judgment-rate interest. "The Plan Documents must be construed as a whole with each provision given reasonable meaning and effect." NYC Appeal, 487 F.3d at 1333. The Colleges focus on part of the Plan's definition of "allowed" in isolation, stating that an allowed asbestos claim constitutes a "final, non-appealable judgment against the Trust." Plan art 1.9. This same provision states in pertinent part that "'[a]llowed' means . . . any [a]sbestos [c]laim that is liquidated and allowed pursuant to the applicable Asbestos Claims Resolution Procedures or, if applicable, pursuant to a Final Order of the Bankruptcy Court" but only to the extent so allowed. Id. (emphasis added); see also APDCRP §IV(A)(5) ("Allowed [c]laim shall mean and refer to any [c]laim allowed for payment . . .") (emphasis added). Thus, despite the Colleges' argument that an "allowed claim" is distinct from a "claim," an "allowed claim" is nevertheless a type of claim. The Plan Documents clearly state that "no... interest shall be paid with respect to any [c]laim . . . except as specified or as [a]llowed by" a

12

bankruptcy court order. Plan art. 13.16 (emphasis added). Provisions in the Plan Documents generally likening "allowed claims" to "judgments," do not override the plain terms of the Plan Documents which expressly preclude a right to interest.

"The confirmed Plan Documents are 'the result of extensive arms length negotiations' among the interested parties and embody 'various settlements and compromises.'" NYC Appeal, 487 F.3d at 1335 (quoting In re Celotex Corp., 204 B.R. at 597). If "allowed claim" status was intended to trigger the accrual of judgment-rate interest, the Plan Documents could have expressly so provided.

The Colleges' attempt to read a legal right to judgment-rate interest into this Court's decision in the NYC Appeal is also unpersuasive. See generally NYC Appeal, 487 F.3d 1320. This Court referred to provisions in the Plan Documents likening allowed claims to judgments against the Trust in connection with establishing the binding nature of allowed claims on the Trust. See id. at 1329-30. The question of interest, and specifically the question of whether the Plan Documents required the payment of interest on allowed claims, was not an issue before this Court in that case. Nor did this Court read a right to interest into the Plan provisions referring to the enforceability of allowed claims. See id.,(stating that "[d]eeming a claim 'allowed' is not just a procedural formality; it also affects the claim's enforceability"); Plan art. 1.9; APDCRP § IV(E)(2). In fact, this Court

13

recognized that, despite the binding nature of allowed claims, the Trust has a right to invoke judicial review if it believes the Administrator abused its discretion in allowing a claim. See NYC Appeal, 487 F.3d at 1337.[4] The characterization of allowed claims as "judgments" in the Plan Documents to establish the binding nature of an allowed claim does not suggest that judgment-rate interest accrues.

Therefore, the Plan Documents, construed as a whole, do not establish that the Colleges are entitled to judgment-rate interest pursuant to 28 U.S.C. 1961.

B.      The method of payment is consistent with the Trust's purpose

We also reject the Colleges' claim that the equities support awarding the Colleges judgment-rate interest. Once the judicial process resolved the dispute concerning the extent of the Trustee's authority over allowed claims, the Trust paid the Colleges' Allowed Claims. Included in the payment to the Colleges was an additional amount representing their ratable share of the return on the Trust's investments that had accrued during the duration of the litigation over the Colleges' Allowed Claims.

This method of payment to the Colleges is consistent with the Trust's mandate of equal and fair treatment to all claimants. Trust Agreement arts. 2.2

---

[4] In fact, this Court upheld the Trust's decision to withhold payment on an illustrative patent claim, reversing and remanding the bankruptcy court's grant of summary judgment to the City of New York on the claim. NYC Appeal, 487 F.3d 1338-39.                                    .

14

(stating that a purpose of the Trust is to ensure that all holders of similar PD claims are paid in substantially the same manner), 3.1(a), 3.4(a); see 11 U.S.C. § 524(g)(2)(B)(ii)(V) (the Bankruptcy Code provision under which the Trust was established which states that the Trustee must pay all claimants with similar claims in a substantially equivalent manner).  The Colleges' argument that the payment rate was imposed on the Colleges without an express agreement does not adequately consider the Trustees' responsibility to pay "all claimants with similar claims in a substantially equivalent matter."  Trust Agreement 3.4(e)(iii).  The Trust has not paid statutory judgment-rate interest to any other PD claimant.  Even if no other claimant would benefit from the application of judgment-rate interest because the additional amount they received from the Trust was greater, the Trust acted consistent with its mandate by using the same method of computation in making additional payments to all similarly situated PD claimants, including the Colleges.

Awarding judgment-rate interest would frustrate the Trust's purpose to ensure, to the extent possible that funds are available to pay present claims and future demands that involve similar claims in substantially the same manner.  See Trust Agreement art. 2.2, 3.4(e)(iii); see also In re Celotex Corp., 204 B.R. at 605. A stated purpose of the Trust is to "preserve, hold, manage, and maximize the

15

Trust Assets for use in paying Allowed Asbestos Claims." Plan art. 5.1.

However, the Plan Documents recognize that, when the Trust was established, the

total number and amount of claims that ultimately may be allowed was unknown.

Trust Agreement art. 3.4(a); see Bankruptcy Dismissal Order,Adv. No. 02-522 at

9. The Trust consequently pays claimants only a percentage of their allowed claim

amounts. Plan art. 5.1; Trust Agreement art 3.4(a).

Given that PD claimants receive only a percentage of their allowed claim

amounts, and given that the Trust's resources are not unlimited, the bankruptcy

court correctly reasoned that "the Plan Documents do not contemplate the accrual

of post-judgment interest on [a]llowed [c]laims at the federal statutory rate."

Bankruptcy Dismissal Order, Adv. No. 02-522 at 10. Unlike the method of

payment used by the Trust, the federal statutory rate is not linked to the Trust's

return on investments and thus, additional payments on certain allowed claims at

such a rate could potentially deplete the pool of money from which all claimants

obtain money damages. Therefore, as the bankruptcy court reasoned, awarding

judgment-rate interest to the Colleges would be "inconsistent with the purpose of

the Trust to preserve its assets for use in paying all present and future Claims in

substantially the same manner." Id. at 10.

     C.    The Additional Payment to the Colleges Does Not Establish that the Colleges are Legally Entitled to Judgment-Rate Interest.

16

The Colleges also erroneously claim that the only way to harmonize the Trust's actions with the Plan Documents is to recognize that the Plan does not prohibit interest on allowed claims, and that, in fact, the Trust's failure to pay judgment rate interest violates provisions in the Plan Documents. Despite the Colleges' argument to the contrary, the act of paying an additional amount to the Colleges does not lead to the conclusion that the Plan Documents trigger a right to judgment-rate interest.

The Trustees stand as fiduciaries to all claimants. The Trustees, therefore, must consider their responsibilities to both PD claimants and personal injury claimants, including present and future claimants of both types, and must pay similar claims in substantially the same manner. See Trust Agreement arts. 2.2, 3.1(a), 3.4(a); see also 11 U.S.C. § 524(g)(2)(B)(ii)(V).

Under the Plan Documents, once a claim is allowed, the Trustees have "complete discretion to determine the timing and the appropriate method for making payments," subject to the requirements of the Plan Documents. Trust Agreement art. 3.4(c).

As the bankruptcy court explained, the Plan Documents do not contemplate a considerable lapse of time between the Administrator's determination to allow a claim and payment by the Trust. Bankruptcy Dismissal Order, Adv. No. 02-522 at

17

12; see Trust Agreement arts. 3.3(a); 3.4(e)(iii) (providing for prompt payment by the Trust once an Administrator allows a claim). Consequently, when the Trustees finally paid the disputed claims to the City of New York, the payment included an additional amount based upon the Trust's return on the City of New York's share of the Trust's assets that were not distributed to the City of New York during the course of adversary proceedings.

By using this method of calculating the additional payment, the Trustees did not deplete the Trust of assets that it otherwise would have retained had it paid the claimants promptly after their claims were allowed. Nor did this method permit other recipients to benefit from the delay in payment on certain allowed claims.

The Trust made similar additional payments, based upon the same formula, to other delayed payment recipients. The Trust, therefore, made an additional payment to the Colleges, using the same method of computation, for the significant period of judicial review during which the Trust withheld payment on the Colleges' Allowed Claims.

This additional payment does not necessitate the conclusion that the Plan Documents require judgment-rate interest. The payments were within the Trustees' discretion and are consistent with the Trust's obligation to pay similar

18

claims in substantially the same manner.  <u>See</u> Trust Agreement arts. 2.2, 3.1(a),

3.4(a); <u>see also</u> 11 U.S.C. § 524(g)(2)(B)(ii)(V).

## <u>CONCLUSION</u>

Based on the foregoing reasons, we uphold the district court's decision

affirming the bankruptcy court's order of dismissal.

AFFIRMED.